UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SWEETWATER ESTATES, LTD.,

                        Plaintiff,

-against-

ANGIE M. CARPENTER, Supervisor of the Town of Islip, STEVEN J. FLOTTERON, TRISH BERGIN WEICHBRODT, JOHN C. COCHRANE Jr., ANTHONY S. SENFT Jr., OLGA MURRAY, and ALEXIS WEIK, constituting the Town Board of the Town of Islip, and the TOWN BOARD OF THE TOWN OF ISLIP, and JOHN SCHETTINO, Chairman, KEVIN BROWN, Vice-Chairman, DONALD J. FIORE, JOSEPH DeVINCENT, ANTHONY MUSUMECI, DANIEL DeLUCA, MICHAEL KENNEDY, and VINCENT PULEO, constituting the Planning Board of the Town of Islip, and the PLANNING BOARD OF THE TOWN OF ISLIP, the TOWN OF ISLIP DEPARTMENT OF ENVIRONMENTAL CONTROL, the TOWN OF ISLIP DEPARTMENT OF PLANNING AND DEVELOPMENT, and JOSEPH MONTUORI, and BRETT ROBINSON, THOMAS DATRE Sr., THOMAS DATRE Jr., CLARA DATRE, DFF FARM CORP., DAYTREE CONSTRUCTION CO., INC., DAYTREE CUSTOM BUILDERS, INC., DAYTREE AT CORTLAND SQUARE, INC., IEV TRUCKING CORP., and DINO PONTE, Individually and d/b/a D&A SITE CLEARING, INC.,

                        Defendants.
------------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
16-CV-1578 (SJF)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

       Presently before the Court, on referral from the Honorable Sandra J. Feuerstein for disposition, is Defendants' Thomas Datre, Sr. ("Senior"), Clara Datre ("Clara"), Daytree Construction Co., Inc., Daytree Custom Builders, Inc., and Daytree

1

at Cortland Square, Inc. (collectively, the "Senior Datre Defendants") motion seeking an Order pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P. 11" or "Rule 11") sanctioning Plaintiff Sweetwater Estates, Ltd. ("Plaintiff" or "Sweetwater") and Plaintiff's former counsel, Fredrick P. Stern, PC ("Stern PC"), for asserting and maintaining their claims against the Senior Datre Defendants without evidentiary support.[1] *See* Docket Entry ("DE") [106]. Also before the Court is the Senior Datre Defendants' letter motion requesting that the arguments raised by Frederick Stern ("Stern") for the first time at oral argument held on January 25, 2018 be waived or, alternatively, that the Senior Datre Defendants be permitted to address such arguments in a formal written submission. *See* DE [136]. For the reasons set forth herein, the Court denies the Senior Datre Defendants' request pertaining to Stern's newly-asserted arguments and further denies the motion for sanctions.

I.  **Relevant Background**

By way of Complaint filed on March 31, 2016, Plaintiff commenced this action against the Senior Datre Defendants and others seeking to recover damages it allegedly sustained as a result of illegal dumping of toxic materials on real property owned by Sweetwater located at 367 Lincoln Boulevard in Hauppauge, New York (the "Subject Property"). *See* DE [1]. Plaintiff filed an Amended Complaint on April 9,

---

[1] The Second Circuit has not yet definitively decided whether a Magistrate Judge has statutory authority to impose sanctions pursuant to Fed. R. Civ. P. 11. *See Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010). In light of Judge Feuerstein's referral of the instant motion "for disposition," and because this Court finds that sanctions are not warranted, the Court adopts the reasoning of Judge James Orenstein in *Goodwin v. MTA Bus Co.* and concludes that, under the circumstances, this Court has authority to issue this decision. *See* No. 14CV4775, 2017 WL 1082408, at *1 n.1 (E.D.N.Y. Mar. 22, 2017) ("Because I determine that no sanctions should be imposed, and because that result is a non-dispositive resolution of a pre-trial matter, I conclude that I have the authority to issue this decision.").

2

2016, *see* DE [7], and a Second Amended Complaint ("SAC") on August 18, 2016, *see* DE [46]. The SAC alleges, among other things, that the Senior Datre Defendants were responsible for such illegal dumping and thus violated the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9659; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*; and various New York state laws. *See* DE [46].

At an initial conference on August 8, 2016, Judge Feuerstein set a discovery end date of February 28, 2017. *See* DE [43]. This Court, in turn, entered a Scheduling Order on September 27, 2017. *See* DE [56]. Sweetwater had provided its initial Rule 26(a)(1) disclosures prior to the entry of the Scheduling Order, though several parties objected to them as being insufficient. *See* DE [88] ¶ 15. Consequently, Plaintiff amended its initial disclosures on October 20, 2016. *See id.* Sweetwater also served its responses to written discovery approximately one-month late, at which time it produced no responsive documents. *See id.* ¶ 16. On January 5, 2017, Defendants Angie M. Carpenter, Supervisor of the Town of Islip, Steven J. Flotteron, Trish Bergin Wichbrodt, John C. Cochrane Jr., Anthony S. Senft, Jr., Olga Murray, and Alexis Weik, constituting the Town Board of the Town of Islip, and the Town Board of the Town of Islip, and John Schettino, Chairman, Kevin Brown, Vice-Chairman, Donald J. Fiore, Joseph DeVincent, Anthony Musumeci, Daniel DeLuca, Michael Kennedy, and Vincent Puleo, constituting the Planning Board of the Town of Islip, and the Planning Board of the Town of Islip, the Town of Islip Department of Environmental Control, and the Town of Islip Department of Planning and Development (collectively,

3

the "Town Defendants") moved for an extension of the February 28, 2017 discovery end date due to: (i) Plaintiff's failure to provide timely responses to discovery demands; (ii) the large volume of records and anticipated testimony in the matter; and (iii) the anticipated need for expert disclosure. *See* DE [60]. By Order dated January 5, 2017, Judge Feuerstein denied the Town Defendants' motion on the basis that they failed to diligently seek Plaintiff's compliance with this Court's September 27, 2017 Scheduling Order. *See* DE [61].

At a status conference on January 13, 2017,[2] this Court set a deadline of January 17, 2017 for Sweetwater to produce all outstanding documents, ordered Plaintiff to appear for a deposition on February 1, 2017, and provided that such deadlines could not be moved without consent from all parties.[3] *See* DE [63]. Immediately after the January 13, 2017 conference, counsel for the Senior Datre Defendants personally handed Stern a frivolous litigation letter pursuant to Fed. R. Civ. P. 11, which demanded that Sweetwater withdraw its claims against those defendants. *See* Reply Declaration of Amanda Rose Disken, Exhibit ("Ex.") C, DE [108-1]. On or about January 17, 2017, Plaintiff served a USB drive containing video footage that did not depict or involve the Senior Datre Defendants. *See* DE [88] ¶ 19.

On February 2, 2017, Stern advised the Court via letter that, due to medical reasons, Plaintiff's designated representative, Mr. Joseph Sacco ("Sacco" or "Mr.

---

[2] This status conference was initially scheduled for January 6, 2017, but Stern failed to appear at that conference and failed to provide either advanced notice to defense counsel or an explanation for his absence.

[3] Plaintiff's deposition was moved from February 1, 2017 to February 2, 2017 to accommodate Stern's schedule. *See* DE [65].

4

Sacco"), was "unable to appear for deposition . . . as ordered." DE [64]. Thereafter, the Senior Datre Defendants, the Town Defendants, and Defendant IEV Trucking Corp. ("IEV") (collectively, "Defendants"), moved to compel the deposition of an individual with personal knowledge of the events giving rise to the claims asserted in the SAC. *See* DEs [65]-[67]. Following a motion hearing on February 27, 2017, this Court granted the motions to compel and ordered Sacco to appear for his deposition at 5:00 p.m. on that same date. *See* DE [68]. In so ruling, the Court noted the following:

> Plaintiff has indicated that he will not appear for his deposition this evening due to ongoing health problems. These are the same problems that prevented him from appearing for his deposition on February 2, 2017. Despite these pre-existing problems no one moved for an extension of the discovery deadlines from Judge Feuerstein.

*Id.*

Notwithstanding Stern's representation during the February 27, 2017 motion hearing, Sacco did in fact appear for his deposition that evening, but only for a limited period of time. *See* DE [69]. The following day, on February 28, 2017, Plaintiff moved for a 90-day extension of the discovery end date. *See id.* In support of that request, Stern explained that Sacco "suffers from debilitating spine ailments that are the result of heavy metal poisoning complicated by Lyme's disease" and "is constantly in extreme pain that prevents him from sitting or standing for more than a short period of time." *Id.* (emphasis removed). Stern further represented that Sacco was prescribed, and had been taking, heavy doses of medication as a result of his medical conditions, which affected his ability to sit for a deposition. *See id.* At the time

Sweetwater filed its motion, a significant amount of discovery—including the remainder of Sacco's deposition, various defendants' depositions, and expert discovery—was still outstanding. *See id.* In addition, according to Stern, Sweetwater was "still awaiting the production of certain videotapes, the existence of which the Town [of Islip] ha[d] previously acknowledged." *Id.* Defendants each opposed the motion to extend the discovery end date arguing, in essence, that Plaintiff failed to diligently prosecute its case and repeatedly disregarded its discovery obligations. *See* DEs [70]-[72]. They further requested that the Court strike the SAC and sanction Sweetwater in light of its discovery-related conduct. *See id.* At a conference on March 6, 2017, Judge Feuerstein denied Plaintiff's motion and scheduled jury selection and a bifurcated trial for May 15, 2017. *See* DE [73]; Electronic Order dated March 22, 2017.

The Senior Datre Defendants and the Town Defendants served motions for summary judgment on March 20, 2017, and IEV served its motion for summary judgment on March 23, 2017. *See* DEs [74], [75], [77]. On March 28, 2017, however, Stern PC moved to withdraw as counsel for Plaintiff.[4] *See* DE [78]. In response, the Senior Datre Defendants filed a letter on April 4, 2017 opposing Stern PC's application to withdraw and, by way of that same letter, cross-moved for sanctions against "Plaintiff and its counsel" pursuant to Fed. R. Civ. P. 11. *See* DE [84]. On April 6, 2017, this Court granted Stern PC's motion to withdraw as counsel, but

---

[4] The motion to withdraw sought an order authorizing "co-counsel for the Plaintiff," Richard I. Scheyer, Esq. ("Scheyer") and Stern PC, to withdraw as counsel of record for Sweetwater in this action. *See* DE [78]. Scheyer, however, never filed a notice of appearance on behalf of Plaintiff and, hence, was never counsel of record.

6

expressly provided that "all deadlines [would] remain in place . . . ." DE [87]. Defendants subsequently filed their respective motions for summary judgment, each of which went unopposed. *See* DEs [88]-[96]. On April 18, 2017, the Senior Datre Defendants served their formal motion for Rule 11 sanctions and informed Sweetwater and Stern PC that opposition papers were due within 14 days of service of the moving papers. *See* DE [97].

On April 21, 2017, Gerard J. McCreight, Esq. ("McCreight") entered a "Notice of Limited Appearance"[5] on behalf of Plaintiff and filed a letter motion seeking to both stay proceedings and reopen discovery, which Defendants opposed for reasons similar to those set forth in their prior submissions. *See* DEs [98], [99], [101]-[103]. By Order dated April 24, 2017, Judge Feuerstein denied Sweetwater's application in its entirety. *See* DE [104]. The Senior Datre Defendants thereafter filed their fully-briefed motion for Rule 11 sanctions on May 9, 2017.[6] *See* DEs [106]-[108], [110], [111].

On October 11, 2017, Sweetwater moved for an extension of time to oppose Defendants' motions for summary judgment. *See* DE [117]. Defendants objected to Plaintiff's request, *see* DEs [118]-[120], which Judge Feuerstein denied on October 13, 2017. *See* DE [121]. Thereafter, on December 19, 2017, Judge Feuerstein granted

---

[5] On September 20, 2017, Judge Feuerstein entered an Order providing that, "notwithstanding his Notice of Limited Appearance, Attorney McCreight is attorney of record for Plaintiff unless and until he is relieved following an application pursuant to Local Rule 1.4 . . . ." DE [115].

[6] Only Stern PC, and not Plaintiff itself, submitted papers in opposition to the Senior Datre Defendants' motion for sanctions. As discussed in further detail below, the only arguments regarding that motion submitted by Sweetwater were made by McCreight at oral argument on January 25, 2018. *See* DE [142].

7

Defendants' motions for summary judgment without opposition, but on the merits, and dismissed all claims asserted against them with prejudice. *See* DEs [124]-[126]. In her Order addressing the Senior Datre Defendants' motion, Judge Feuerstein found that "the summary judgment record is devoid of any documents, photos or videos which would support Plaintiff's allegations that the Senior Datre Defendants were responsible for 'some or all of the dumping' at [the Subject Property] and that such alleged dumping was done with the consent of Senior and Clara." DE [124] at 9-10 (quoting SAC ¶ 50). After analyzing each of Sweetwater's claims against the Senior Datre Defendants in detail, Judge Feuerstein concluded that none was supported by evidence in the record. *See id.* at 11-18.

By letter dated December 27, 2017, the Senior Datre Defendants requested, and this Court granted, oral argument on the motion for sanctions. *See* DEs [130]; Electronic Order dated December 28, 2017. Following several adjournments, the parties appeared for a motion hearing before this Court on January 25, 2018. *See* DE [135]. All counsel, including Stern and McCreight, attended the hearing in person, and Sacco appeared via telephone. *See* DE [142] at 1-2. At the hearing, McCreight, on Plaintiff's behalf, opposed the motion for sanctions for the first time. *See id.* at 9-19. In addition, Stern raised a procedural deficiency with the Senior Datre Defendants' motion that he had not addressed in his opposition papers. *See id.* at 22-28.

Shortly after the motion hearing concluded, the Senior Datre Defendants electronically filed a letter requesting that the Court deem Stern's procedural

argument waived or, in the alternative, allow the Senior Datre Defendants an opportunity to brief the issues raised and submit a formal written response. *See* DE [136]. Both Sweetwater and Stern PC opposed the Senior Datre Defendants' request, and the Senior Datre Defendants submitted a reply thereto. *See* DEs [137], [139], [140].

## II. Legal Standard

Rule 11 provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(3). Further, Rule 11 states that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction . . . ." Fed. R. Civ. P. 11(c)(1). However, it is well-settled that "sanctions should issue only in extraordinary circumstances . . . ." *Graves v. Deutsche Bank Sec. Inc.*, No. 07 Civ. 5471, 2010 WL 997178, at *7 (S.D.N.Y. Mar. 18, 2010) (internal quotation marks omitted); *see Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) ("[S]anctions may not be imposed unless a particular allegation is utterly lacking in support."); *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) ("Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success."). Ultimately, "[t]he imposition of sanctions by the court and the determination of the amount of the

9

sanction is left to the court's discretion." *Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*, No. 05-cv-3826, 2009 WL 2242331, at *10 (E.D.N.Y. July 27, 2009); *see also Lorber v. Winston*, 993 F. Supp. 2d 250, 253 (E.D.N.Y. 2014) ("[E]ven where a court determines that Rule 11(b) has been violated, the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion.").

In considering a motion for sanctions, courts evaluate the objective reasonableness of the pleading's allegations at the time the pleading was signed. *See Asbeka Indus. v. Travelers Indem. Co.*, 831 F. Supp. 74, 90 (E.D.N.Y. 1993); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir. 1986) ("[T]he signer's conduct is to be judged as of the time the pleading or other paper is signed."); *Dennis v. Pan Am. World Airways, Inc.*, 746 F. Supp. 288, 292 (E.D.N.Y. 1990) ("The duty to conduct a reasonable pre-filing inquiry into the law does not require that the signer ultimately be proved correct in his view of the law."). In determining whether to impose sanctions, "the court resolves all doubts in favor of the non-movant." *Simms v. Biondo*, 158 F.R.D. 247, 249 (E.D.N.Y. 1994); *see Burke v. Quick Lift, Inc.*, 464 F. Supp. 2d 150, 163 (E.D.N.Y. 2006) ("[W]hen divining the point at which an argument turns from merely losing to losing and sanctionable, courts must resolve all doubts in favor of the signer of the pleading.") (internal quotation and alterations omitted).

## III. Discussion

The Senior Datre Defendants seek to impose sanctions upon both Plaintiff and Stern PC on the basis that the contentions in the SAC lack evidentiary support. *See* Declaration of Amanda Rose Disken ("Disken Declaration" or "Disken Decl."), DE

[106-1], ¶ 2. For the reasons set forth below, the Court denies the Senior Datre Defendants' motion for Rule 11 sanctions on the two independent bases that they: (i) failed to comply with Fed. R. Civ. P. 11's safe harbor provision, and (ii) failed to demonstrate extraordinary circumstances warranting the imposition of sanctions against either Stern PC or Sweetwater.

A. **Procedural Arguments**

Pursuant to Fed. R. Civ. P. 11, a motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service . . . ." Fed. R. Civ. P. 11(c)(2). Rule 11's safe harbor provision requires that a party intending to move for sanctions serve a copy of the actual motion to be filed, and not merely a letter warning of the party's intent to seek sanctions. *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) ("An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period."); *see also Castro v. Mitchell*, 727 F. Supp. 2d 302, 307-08 (S.D.N.Y. 2010) ("Courts have held that even a letter detailing the nature of the conduct which purportedly violates Rule 11 and threatening to file a motion for sanctions cannot constitute notice under Rule 11."); *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005) ("[T]he plain language of the rule states explicitly that service of the motion itself is required to begin the safe harbor clock—the rule says nothing about the use of letters."). It is well-established that "[a]ny motion seeking Rule 11

sanctions that does not comply with [the safe harbor] provisions must be denied." *Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*, No. 12-cv-642, 2014 WL 7338849, at *3 (E.D.N.Y. Dec. 22, 2014); *see also Star Mark Mgmt.*, 682 F.3d at 175 (holding that Rule 11's safe harbor provision "is a strict procedural requirement").

As a threshold matter in determining whether Rule 11's safe harbor provision bars the Senior Datre Defendants' motion for sanctions, the Court must consider two competing procedural arguments or, more specifically, two competing alleged procedural deficiencies. At the motion hearing on January 25, 2018, Stern asserted for the first time that the motion for sanctions should be denied based on the Senior Datre Defendants' failure to comply with Rule 11's safe harbor provision by not timely serving either Plaintiff or Stern PC with a copy of their motion for sanctions before filing it with the Court. The Senior Datre Defendants, however, claim that Sweetwater and Stern PC waived this argument because they did not include it in their opposition papers and instead raised it for the first time at oral argument.[7]

On the one hand, the Court acknowledges that "[a]rguments raised for the first time at oral argument are generally deemed waived." *Bd. of Managers of Mason Fisk Condo. v. 72 Berry St., LLC*, 801 F.Supp.2d 30, 39 (E.D.N.Y.2011) (citing *Tamar v. Mind C.T.I., Ltd.*, 723 F.Supp.2d 546, 555 (S.D.N.Y.2010)); *see Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 98 (E.D.N.Y. 2010); *In re Monster Worldwide, Inc. Sec. Litig.*, 251

---

[7] In the alternative, the Senior Datre Defendants have requested leave to submit supplemental briefing regarding Stern's procedural argument. That request is denied, as this Court is able to independently evaluate the relevant issues without further briefing from the parties. It is also noteworthy that, although counsel for the Senior Datre Defendants stated on the record that "the opposition brief doesn't contain any of what [ ] Stern just spoke about," referring to Stern's procedural argument, she neither expressly objected to, nor reserved the right to submit further briefing responding to, that argument. *See* DE [142].

F.R.D. 132, 137 (S.D.N.Y.2008) ("[T]his argument was raised for the first time at oral argument and so was waived in terms of this motion."); *Nobel Ins. Co. v. City of New York*, No. 00-CV-1328, 2006 WL 2848121, at *16 (S.D.N.Y. Sept. 29, 2006) ("Normally, [the Court] will not consider arguments raised for the first time in a reply brief, let alone [at or] after oral argument." (alterations in original) (quoting *United States v. Barnes*, 158 F.3d 662, 672 (2d Cir.1998))). Yet, on the other hand, "this Court lacks the authority to waive the procedural requirements of Rule 11." *Intravaia*, 919 F. Supp. at 296; *see Castro*, 727 F.Supp.2d at 305 ("In disposing of a motion for Rule 11 sanctions, a district court 'must adhere to the procedural rules which safeguard due process rights.'" (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 58 (2d Cir.2000))). Having weighed these competing principles, the Court holds that Rule 11's safe harbor provision, a procedural rule, trumps the principle that arguments raised for the first time at oral argument are generally waived. The Court reaches this conclusion primarily because courts in this Circuit have interpreted Rule 11's procedural provisions as mandatory, but, by contrast, have described the rules concerning argument waiver as permissive and less stringent. *Compare, e.g.*, *Intravaia*, 919 F. Supp. at 296 (district court "lacks authority" to waive Rule 11's procedural requirements), *with Mason Fisk*, 801 F.Supp.2d at 39 (arguments not raised in briefs are "generally deemed waived"). Accordingly, because Rule 11's safe harbor provision is a strict procedural requirement, *see Star Mark Mgmt.*, 682 F.3d at 175, the Court will consider the merits of Stern's argument on this issue.[8]

---

[8] In addition, the Court points out that—particularly given that Rule 11's safe harbor provision is strictly construed in the Second Circuit—the Senior Datre Defendants could have preemptively

13

Turning to the merits of the procedural argument, the Court finds that the Senior Datre Defendants failed to satisfy the safe harbor provision because they did not timely serve a copy of the instant motion on Plaintiff and Stern PC. Rather, on January 13, 2017, counsel for the Senior Datre Defendants served Stern with a letter "demand[ing] that, within the time prescribed by . . . Rule 11, [he] withdraw [his] wholly unsupported claims against the[ ] [Senior] Datre Defendants." DE [108-1]. That letter further explained that "[i]t is not the Complaint alone in this matter that gives rise to this Rule 11 letter, but your continued discovery failures, coupled with the fact that you failed to appear at the January 6, 2017 status conference on behalf of your client without any explanation whatsoever." *Id.* In conclusion, the letter stated, "[i]n the event that you do not withdraw your claims against the[ ] [Senior] Datre Defendants, despite knowing that the allegations which Plaintiff has made are without any basis in fact whatsoever, we intend to move for sanctions against you pursuant to Rule 11." *Id.* However, merely requesting withdrawal is insufficient for purposes of the triggering the safe harbor clock absent service of the actual motion for sanctions. *See Lancaster v. Zufle*, 170 F.R.D. 7, 7 (S.D.N.Y. 1996) (denying motion

---

addressed this issue in their papers, but elected not to do so. Rather, they simply asserted in a conclusory manner in their moving papers that their January 13, 2017 Rule 11 letter commenced the safe harbor clock. *See* Disken Decl. ¶ 4. As explained further below, the Senior Datre Defendants indisputably failed to comply with Rule 11's plain language: "The motion [for sanctions] must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Thus, it should have been readily apparent when the Senior Datre Defendants filed their motion that the safe harbor issue would likely arise. Indeed, even assuming Stern had not raised the argument in question, this Court would still be required to evaluate whether the motion complies with Rule 11. *See Intravaia*, 2014 WL 7338849, at *3 ("Any motion seeking Rule 11 sanctions that does not comply with [the safe harbor] provisions must be denied.").

14

for sanctions where the defendant sent a letter "request[ing] that [the plaintiff] consider withdrawing [the] lawsuit"); *Holmes v. Allstate Corp.*, No. 11 Civ. 1543, 2012 WL 627238, at *18 (S.D.N.Y. Jan. 27, 2012) ("[T]his Court has repeatedly refused to impose sanctions based on mere warning letters, even where the challenged conduct was sanctionable.") *report and recommendation adopted*, 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012). The Senior Datre Defendants' argument that their January 13, 2017 letter satisfied Rule 11's safe harbor provision, *see* Disken Decl. ¶; DE [142] at 42, is therefore misplaced. In addition, given that the Senior Datre Defendants' motion for Rule 11 sanctions was initially brought by cross-motion against "Plaintiff and its attorneys," *see* DE [84], that too was insufficient to trigger the safe harbor period because Rule 11 makes clear that "[a] motion for sanctions must be made separately from any other motion . . . ," Fed. R. Civ. P. 11(c)(2), and, in any event, the arguments therein were not identical to those set forth in the instant motion. *Compare* DE [84], *with* DE [106]. The Senior Datre Defendants served their formal motion for sanctions, supported by the Disken Declaration, upon Sweetwater and Stern PC via first class mail on April 17, 2017. *See* DE [97]. Though the safe harbor period concluded on May 11, 2017,[9] the Senior Datre Defendants filed their motion on May 9, 2017. *See* DE [106]. Accordingly, because the Senior Datre Defendants failed to comply with Rule 11's safe harbor provision, the motion for sanctions is denied.

---

[9] Pursuant to Rule 6, "[w]hen a party may or must act within a specified time after being served and service is made . . . [by mail], 3 days are added after the period would otherwise expire . . . ." Fed. R. Civ. P. 6(d). Under the circumstances, therefore, the safe harbor period was extended to 24 days from the date the Senior Datre Defendants sent the motion.

15

## B. Merits of the Senior Datre Defendants' Motion for Sanctions

Even if the Senior Datre Defendants had satisfied Rule 11's safe harbor provision, the Court would still deny the motion for sanctions because the Court finds no extraordinary circumstances warranting the imposition of sanctions against either Stern PC or Sweetwater.

In support of the instant motion, the Senior Datre Defendants argue that, "to date, Plaintiff has failed to produce a single document, photo, or video to support any of its frivolous claims against [them] and Plaintiff's former counsel, [Stern PC] . . . represented that Plaintiff's sole shareholder, Lana Esterman, has absolutely no personal knowledge of any of the facts which purportedly give rise to its claims." Disken Decl. ¶ 5. They submit the affidavit of Senior, which states that the Senior Datre Defendants have never been to the Subject Property and that Senior did not even know where the Subject Property was. *See id.* ¶ 8. In addition, they argue that "Plaintiff and its former counsel commenced and continue to maintain . . . [this action] based entirely upon what they read in the news, which had nothing to do with the property at issue herein, and have forced the [Senior Datre] Defendants to incur attorneys' fees, costs, and expenses to defend themselves." *Id.* ¶ 9.

In opposition, Stern contends that Sacco represented to him (Stern) that he had personally witnessed the Senior Datre Defendants dumping at the subject property:

> During [numerous] . . . conversations with Mr. Sacco he advised me that sometime in the summer of 2013 several large 24 wheel dump trucks appeared on the subject property and dumped material of unknown origin. Mr. Sacco, who was just recovering from surgery, was advised

16

> by his tenants that representatives of the police and/or [the] Town . . . were present at the scene.
>
> Upon arriving at the property Mr. Sacco spoke to several representatives of the Town . . . , who provided their badges as identification, and directed the persons involved in the dumping to cease and desist. Mr. Sacco advised that the persons responsible for dumping at that time were in a truck with the "IEV" logo and he has since provided video tapes of same[ ]. Mr. Sacco advised that the people perpetrating the dumping were allowed to leave and the Plaintiff was forced to incur approximately $50,000.00 to remove all of the debris pursuant to an agreement with the Town . . . .
>
> Several months later Mr. Sacco became aware that there was further dumping occurring at the site and that representatives of the Town . . . , the Suffolk County Police and/or the Suffolk County District Attorney's Office were performing a "sting operation" wherein they had video cameras set up at the site over an approximately two week period to discover who was dumping at the real property.
>
> Mr. Sacco advised that, at this time, members of the Suffolk County Police, the Environmental Protection Agency, the District Attorney's Office, by District Attorney Theodore Savino, were all present and were in contact with members of the Town . . . by telephone. At that time it was discovered that the companies involved in the dumping were: Datre, IEV, Calabrese and D & A Corporation. Mr. Savino instructed the companies that were dumping to return to the real property and remove all of the dumped debris. A payloader was brought to the site and Mr. Savino remained until all of the visible debris was removed.
>
> * * *
>
> Throughout my representation of Mr. Sacco he has remained steadfast that he personally witnessed representatives of the Datre companies dumping at the real property.

Declaration in Opposition to Motion for Rule 11 Sanctions ("Stern Decl."), DE [107-1], ¶ 4-7, 12. Stern further contends that his and Sacco's efforts to obtain the videotapes in question were repeatedly frustrated. *See id.* ¶ 9, 12.

At oral argument, McCreight argued that Plaintiff had a factual basis for commencing this action against the Senior Datre Defendants because Sacco, a

17

corporate officer of the company, was a personal eyewitness to the fact that "Datre Trucks" were engaged in dumping of materials on the Subject Property. *See* DE [142] at 10. According to McCreight, "having witnessed personally the dumping, Sweetwater's officers need not go further at that point to form a deeper reasonable inquiry as to who should or shouldn't be a defendant in this case." *Id.* Rather, McCreight asserted, "Sweetwater relied on its counsel to adduce evidence during discovery to further support its case" but "[s]uch work was simply not done, despite Plaintiff's requests for the status, and what kind of efforts were being undertaken." *Id.* at 12. Finally, McCreight contended that Sweetwater's failure to adduce evidence supporting its claims during the discovery period "does not infect the entire pleading." *Id.* at 18.

While it is clear at this stage of the litigation that the unopposed motion for summary judgment was properly granted under the circumstances, *see* DE [124], it is nevertheless plausible that both Plaintiff and Stern believed at all relevant times that their "factual contentions . . . [would] likely have evidentiary support after a reasonable opportunity for further investigation and discovery." Fed. R. Civ. P. 11(b)(3). According to McCreight, Sacco personally witnessed "Datre Trucks" dumping on the subject property. Indeed, McCreight represented to this Court at oral argument that, had Sweetwater opposed Defendants' motions for summary judgment, it would have submitted an affidavit of Sacco to that effect. *See* DE [142] at 16. This fact alone constitutes a sufficient factual basis upon which to assert the claims in question against the Senior Datre Defendants. Moreover, Sacco was

18

apparently under the impression that the Town was in possession of video footage showing the Senior Datre Defendants dumping on the Subject Property, *see* Stern Decl. ¶ 6-7, but those videos were never obtained during discovery. With respect to Stern, he was entitled to rely upon Sacco's representations regarding his personal account of the Senior Datre Defendants dumping on the Subject Property and the existence of the video footage of such dumping as bases for his belief that the claims asserted either had or would likely have evidentiary support. To be sure, the Court admonishes both Sacco and Stern for their repeated unprofessional and dilatory behavior throughout the course of this litigation. However, because the Court must resolve all doubts in favor of Sweetwater and Stern PC, *see Simms*, 158 F.R.D. at 249, the Court concludes that sanctions under Rule 11 are unwarranted.

## IV. Conclusion

For the reasons set forth above, the Court denies: (i) the Senior Datre Defendants' motion to preclude Plaintiff's and Stern PC's procedural arguments, and (ii) the Senior Datre Defendants' motion for Rule 11 sanctions.

Dated: Central Islip, New York
      March 6, 2018                       **SO ORDERED**

                                               <u>s/ Steven I. Locke</u>
                                               STEVEN I. LOCKE
                                               United States Magistrate Judge